UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MELISSA HEATH,

               Plaintiff,

    v.

CHAD WAKEFIELD, et al.,

               Defendants.

CIVIL ACTION NO. 1:24-CV-01189

(MEHALCHICK, J.)

**MEMORANDUM**

Presently before the Court are Defendant Wellpath a/k/a Wellpath LLC f/k/a Correct Care Solutions's ("Wellpath") motion to dismiss (Doc. 86), Defendant Morgan Goldizen, CRNP's ("Goldizen") motion to dismiss (Doc. 88), and Defendants Chad Wakefield ("Wakefield"), Matthew Pyo ("Pyo"), Kenneth Shea ("Shea"), and Kendra Hess's ("Hess") (collectively, "Commonwealth Defendants") motion for judgment on the pleadings. (Doc. 91). On July 17, 2024, Plaintiff Melissa Heath ("Heath") initiated this action by filing a complaint individually and as Administrator of the Estate of Joshua Heath. (Doc. 1). On June 27, 2025, Heath filed the operative second amended complaint against Commonwealth Defendants, John Shultz ("Shultz"), Goldizen, Wellpath, ten unknown correctional officers ("Correctional John Does"), and ten unknown medical providers ("Medical John Does") (collectively, "Defendants"). (Doc. 80). For the following reasons, the Court denies Wellpath and Commonwealth Defendants' motions. The Court grants in part and denies in part Goldizen's motion.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from the second amended complaint and, for the purposes of the instant motions, is taken as true. (Doc. 80). Heath is the mother of Joshua

Heath ("Joshua"), a former inmate at State Correctional Institution Smithfield ("SCI Smithfield") who committed suicide in July 2022, while incarcerated at SCI Smithfield. (Doc. 80, ¶¶ 4-9, 11). Defendants are employees of and healthcare providers for SCI Smithfield. (Doc. 80, ¶¶ 17-41). Wakefield was the Superintendent and Facility Manager at SCI Smithfield at the time of Joshua's death. (Doc. 80, ¶ 18). In that position, Wakefield was responsible for the overall supervision of SCI Smithfield, including overseeing staff and prison policy. (Doc. 80, ¶¶ 19, 27, 29). Pyo and Shea were Deputy Superintendents at SCI Smithfield at the time of Joshua's death. (Doc. 80, ¶¶ 21, 24). In that capacity, Pyo and Shea were also responsible for the overall supervision of SCI Smithfield, including overseeing staff and prison policy. (Doc. 80, ¶¶ 22, 25, 28-29). Goldizen and Hess were both nurses at SCI Smithfield at the time of Joshua's death. (Doc. 80, ¶¶ 31-36).

Joshua struggled with mental health issues and addiction throughout his life. (Doc. 80, ¶ 43). The Pennsylvania Department of Corrections ("DOC") had previously incarcerated Joshua from April 2019 to January 2020 and from May 2021 to March 2022. (Doc. 80, ¶¶ 44-48). During these prior incarcerations, the DOC healthcare providers prescribed Joshua with psychotropic medication and noted that he had mental health issues. (Doc. 80, ¶ 45). The DOC also included Joshua on the DOC's active mental health roster and noted that in 2021, he suffered from "adjustment disorder, mixed anxiety and depression." (Doc. 80, ¶¶ 47-48).

In July 2022, Joshua was serving parole for a prior conviction. (Doc. 80, ¶ 51). On July 4 and 5, 2022, Joshua went to two treatment centers for suicidal thoughts and drug relapse. (Doc. 80, ¶¶ 51-52). The Roxbury Treatment Center ("Roxbury") in Shippensburg, Pennsylvania diagnosed Joshua with schizophrenia and discharged him on July 13, 2022. (Doc. 80, ¶ 53). Two days later, Joshua walked into his parole officer's office, seeking help

2

for his struggles with mental illness and for an adverse reaction to street drugs. (Doc. 80, ¶ 54). That day, the police arrested Joshua for using drugs in violation of his parole conditions. (Doc. 80, ¶ 55). Joshua's parole officer called his parents, who asked the parole officer to arrange for Joshua to be sent back to Roxbury because they were concerned about their son's suicidal expressions and schizophrenia diagnosis. (Doc. 80, ¶¶ 56-57). Nonetheless, on July 16, 2022, the DOC transported Joshua to SCI Smithfield, where the Commonwealth of Pennsylvania processes all parole violators before transferring them to a permanent state prison. (Doc. 80, ¶ 58).

Upon arriving at SCI Smithfield, Joshua required the assistance of four guards to help him walk straight, and he was unable to communicate. (Doc. 80, ¶¶ 59, 63-64). SCI Smithfield staff failed to complete a mental health evaluation and suicide screening for Joshua. (Doc. 80, ¶¶ 62, 66-67). Goldizen and a John Doe Medical Provider placed Joshua on a twenty-three-hour observation in the facility's infirmary, which required nursing staff to remain on-site and ensure a staff member remained within sight or sound observation of Joshua. (Doc. 80, ¶ 69)

On July 17, 2022, at 12:47 am, DOC records show that Joshua exhibited significant confusion, was unable to communicate or understand questions, and had elevated blood pressure. (Doc. 80, ¶¶ 74-75). Sometime around 9:32 am, Joshua attempted suicide by hanging himself with a bed sheet. (Doc. 80, ¶ 76). Joshua's suicide attempt left him severely injured, and he succumbed to his injuries on July 21, 2022, after four days of suffering. (Doc. 80, ¶ 77). SCI Smithfield did not have enough staff working to keep Joshua under constant sight and sound observation and did not assess his mental health status prior to his suicide attempt. (Doc. 80, ¶¶ 79-82). SCI Smithfield staff claimed Joshua articulated no signs of potential self-harm but also reported very little interaction with him. (Doc. 80, ¶ 85). The staff

also reported no signs of self-harm or suicidal behavior but did not assess him over a nine-hour gap of time. (Doc. 80, ¶ 87). Hess, a John Doe Medical Provider, and Shultz all were on duty at the time of Joshua's suicide attempt and failed to medically assess him within the nine hours before his attempt. (Doc. 80, ¶ 91). Defendants also did not provide Joshua with a suicide prevention blanket which is a blanket designed to be too stiff and tear resistant for inmates to turn into a noose. (Doc. 80, ¶ 90).

On June 27, 2025, Heath filed the operative second amended complaint alleging seven counts under federal and state law. (Doc. 80). In Count I, Heath alleges Wakefield, Pyo, and Shea are liable under Section 1983 for deliberate indifference in violation of the Eighth and Fourteenth Amendments. (Doc. 80, ¶¶ 114-24). In Count II, Heath alleges Goldizen, Hess, Shultz, Correctional John Does, and Medical John Does are liable under Section 1983 for deliberate indifference in violation of the Eighth and Fourteenth Amendments. (Doc. 80, ¶¶ 125-35). In Count III, Heath alleges Wellpath is liable under Section 1983 for deliberate indifference in violation of the Eighth and Fourteenth Amendments. (Doc. 80, ¶¶ 136-51). In Count IV, Heath alleges Wellpath is liable for negligence in the alternative to her Section 1983 claim against Wellpath. (Doc. 80, ¶¶ 152-68). In Count V, Heath alleges Goldizen and Medical John Does are liable for negligence in the alternative to her Section 1983 claims against Goldizen and Medical John Does. (Doc. 80, ¶¶ 169-83). In Count VI, Heath alleges that she is entitled to collect damages from all Defendants under the Pennsylvania Wrongful Death Act ("Wrongful Death Act"). (Doc. 80, ¶¶ 184-87). In Count VII, Heath alleges that she is entitled to collect damages from all Defendants under the Pennsylvania Survival Act (the "Survival Act"). (Doc. 80, ¶¶ 188-91).

On July 18, 2025, Wellpath filed a motion to dismiss or in the alternative, a motion

for judgment on the pleadings, along with a brief in support. (Doc. 86; Doc. 87). On August 1, 2025, Heath filed a brief in opposition. (Doc. 102). On August 29, 2025, Wellpath filed a reply brief. (Doc. 110).

On July 18, 2025, Goldizen filed a motion to dismiss, along with a brief in support. (Doc. 88; Doc. 89). On August 1, 2025, Heath filed a brief in opposition. (Doc. 101). On August 29, 2025, Goldizen filed a reply brief. (Doc. 111).

On July 18, 2025, Commonwealth Defendants filed a motion for judgment on the pleadings. (Doc. 91). On August 8, 2025, Commonwealth Defendants filed a brief in support. (Doc. 106). On September 4, 2025, Heath filed a brief in opposition. (Doc. 112). Commonwealth Defendants did not file a timely reply brief. Accordingly, the motions are ripe and ready for disposition.

## II.    LEGAL STANDARDS

### A. MOTION FOR DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors*, Inc., 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted).

The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

B.    MOTION FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings is governed by Rule 12(c) of the Federal Rules of Civil Procedure, which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Granting a 12(c) motion results in a determination on the merits at an early stage in the litigation," and thus, the movant is required " 'to clearly establish [ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)). A Rule 12(c) motion is analyzed under the same standards that apply to a Rule 12(b)(6) motion, construing all allegations and inferences in the light most favorable to the nonmoving party. *Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019). Thus, to survive a 12(c) motion, the complaint must contain sufficient factual matter to show that the claim is facially plausible, enabling the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

"In considering a motion for judgment on the pleadings, a court must accept all of the allegations in the pleadings of the party against whom the motion is addressed as true and draw all reasonable inferences in favor of the non-moving party." *Zimmerman v. Corbett*, 873 F.3d 414, 417-18 (3d Cir. 2017) (citing *Allah v. Al–Hafeez*, 226 F.3d 247, 249 (3d Cir. 2000)). When adjudicating a motion for judgment on the pleadings, the court should generally

consider only those allegations contained in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *see Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp. 2d 591, 595 (E.D. Pa. 2010) (court may consider "the pleadings and attached exhibits, undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents, and matters of public record").

  C.  42 U.S.C. Section 1983

  Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of

the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

### III.  DISCUSSION

Beginning with Wellpath's motion to dismiss, Wellpath avers that the claims against it are subject to dismissal under a joint Chapter 11 plan of reorganization entered by the United States Bankruptcy Court for the Southern District of Texas. (Doc. 86; Doc. 87, at 2). However, due to recent developments in Wellpath's bankruptcy case, the parties have met and conferred regarding Wellpath's status as a party in the action and have agreed that Wellpath's motion should be dismissed as moot because the parties "are working together amicably to create a stipulation for substitution" in compliance with recent bankruptcy court rulings. (Doc. 126, at 1-2). Accordingly, the Court **DENIES** Wellpath's motion **as moot**. (Doc. 86).

Turning to the remaining motions, Goldizen argues that the Court should dismiss Count II against her because Heath fails to allege Goldizen's conduct rises to the level of deliberate indifference in violation of the Eighth Amendment. (Doc. 89, at 5-12). Similarly, Commonwealth Defendants posit that they are entitled to judgment on the pleadings on Counts I and II because Heath fails to allege that any of the Commonwealth Defendants had sufficient personal involvement in Joshua's death to be liable under Section 1983 or engaged in conduct that rises to the level of deliberate indifference in violation of the Eighth Amendment. (Doc. 106, at 11-20). Finally, Goldizen and Commonwealth Defendants aver that Heath's state tort claims fail because her claims are either moot or barred the doctrine of

sovereign immunity.[1] (Doc. 87, at 13-15; Doc. 106, at 20-22). The Court will first assess Heath's Eight Amendment claims. Then, the Court will assess Heath's state tort claims.

### A. HEATH'S EIGHTH AMENDMENT CLAIMS

In Count I, Heath alleges Wakefield, Pyo, and Shea (collectively, "Supervisor Defendants") are liable under Section 1983 for deliberate indifference in violation of the Eighth Amendment. (Doc. 80, ¶¶ 114-24). In Count II, Heath alleges Goldizen, Hess, Shultz, Correctional John Does, and Medical John Does are liable under Section 1983 for deliberate indifference in violation of the Eighth Amendment. (Doc. 80, ¶¶ 125-35). Commonwealth Defendants posit that Heath fails to allege they had sufficient personal involvement in Joshua's death to subject them to Eight Amendment liability. (Doc. 106, at 12-13). Regarding Hess, Commonwealth Defendants contend that she could not have had sufficient personal involvement because she left SCI Smithfield prior to Joshua's suicide attempt. (Doc. 106, at 12). Commonwealth Defendants also argue that Heath fails to allege personal involvement against Supervisor Defendants outside of broad allegations that they supervised SCI Smithfield. (Doc. 106, at 15-17). Both Goldizen and Commonwealth Defendants also aver that Heath fails to allege conduct that rises to the level of deliberate indifference. (Doc. 89, at 5-12; Doc. 106, at 11-15, 18-20). Heath counters that she alleges sufficient personal

---

[1] Commonwealth Defendants also argue that Heath's "Fourteenth Amendment claims must be dismissed because her rights are explicitly protected by the Eighth Amendment." (Doc. 106, at 10-11). However, according to Heath, she "has not asserted any separate Fourteenth Amendment claims" and only references the Fourteenth Amendment because "the Eighth Amendment's prohibition against cruel and unusual punishment was made applicable to the states through the Fourteenth Amendment." (Doc. 112, at 18). "The Eighth Amendment. . . applies to the states by virtue of the Fourteenth Amendment." *Jackson v. Danberg*, 594 F.3d 210, 216 (3d Cir. 2010). Because Heath does not raise any independent Fourteenth Amendment claims, the Court **DENIES** Commonwealth Defendants' motion for judgment on the pleadings to the extent Commonwealth Defendants assert Heath raises separate Fourteenth Amendment claims. (Doc. 91).

involvement from all Commonwealth Defendants. (Doc. 112, at 24-25). Heath further contends that Goldizen and Commonwealth Defendants' failure to prevent Joshua from attempting suicide despite clear signs of the risk of suicide constitutes deliberate indifference. (Doc. 101, at 19-29; Doc. 112, at 25-112).

The Eighth Amendment prohibits cruel and unusual punishment. U.S. Const. amend. VIII. Under the Eighth Amendment, "a prison official [may be] liable for failing to prevent a detainee's suicide." *Palakovic*, 854 F.3d at 223. Like with all Section 1983 claims, to state a Section 1983 Eighth Amendment claim, the plaintiff must allege a defendant had "either actual contemporaneous knowledge of or any personal involvement in any violation of her constitutional rights." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). "Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *see Diorio v. Harry*, No. 1:16-CV-01678, 2021 WL 720257, at *7 (M.D. Pa. Feb. 24, 2021) (finding sufficient personal involvement where a defendant "took part in a suicide risk evaluation of [the decedent]" prior to the decedent's suicide). Where a defendant is a prison official in a supervisory role, a plaintiff may allege personal involvement by alleging the supervisor knowingly implemented or maintained "policies or practices" that created an excessive risk of the plaintiff's suicide and "'disregarded [that] excessive risk.'" *Palakovic*, 854 F.3d at 233 (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 135 (3d Cir. 2001)); *see also McCullough v. Clinton Cnty.*, No. 4:23-CV00171, 2024 WL 1468359, at *10 (M.D. Pa. Apr. 4, 2024) (denying a motion to dismiss claims against prison supervisors because the plaintiff adequately alleged the defendants "instituted and maintained policies denying suicidal inmates with appropriate care").

In addition to alleging personal involvement, to state an Eighth Amendment claim related to an inmate's suicide, a plaintiff must allege:

> (1) that the [decedent] had a particular vulnerability to suicide, meaning that there was a 'strong likelihood, rather than a mere possibility,' that a suicide would be attempted; (2) that the prison official knew or should have known of the [decedent's] particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the [decedent's] particular vulnerability.

*Palakovic*, 854 F.3d at 223–24 (citations omitted)

Regarding the first requirement, "[a] 'strong likelihood' of suicide 'must be so obvious that a lay person would easily recognize the necessity for preventative action.'" *Alexander v. Monroe Cnty.*, 734 F. App'x 801, 804 (3d Cir. 2018) (nonprecedential) (quoting *Palakovic*, 854 F.3d at 222). A plaintiff with a history of suicide attempts or suicidal ideation has a strong likelihood of suicide. See *Palakovic*, 854 F.3d at 222; *see also Denman v. Wetzel,* No. 1:23-CV-01918, 2025 WL 951948, at *7 (M.D. Pa. Mar. 28, 2025); *see also McCullough*, 2024 WL 1468359, at *4.

A plaintiff meets the second requirement, that a defendant knew or should have known about the risk of suicide, where a plaintiff alleges prison medical records contained clear indications of the risk of suicide and the defendants "must have—or, at the very least, should have—reviewed [those records] when considering [the decedent's] treatment." *Palakovic*, 854 F.3d at 231; *see Denman*, 2025 WL 951948, at *9. Finally, a plaintiff sufficiently pleads a defendant acted with deliberate indifference by alleging a defendant knew or should have known about a plaintiff's vulnerability to suicide but nonetheless took actions which significantly increased the risk of suicide. *See Palakovic*, 854 F.3d at 232 (finding a plaintiff sufficiently pled deliberate indifference by alleging the defendant knew of the decedent's "vulnerability and the increased risk of suicide that solitary confinement brings" but nonetheless "permitted [the decedent] to be repeatedly isolated in solitary confinement

anyway"); *see also Denman*, 2025 WL 951948, at *9 (finding that plaintiff sufficiently pled deliberate indifference by alleging a defendant knew of the decedent's risk of suicide but nonetheless released him from a psychiatric observation cell only two days after a suicide attempt); *see also McCullough*, 2024 WL 1468359, at *6 (finding that a plaintiff sufficiently pled deliberate indifference by alleging a nurse defendant was aware of a decedent's risk of suicide but failed to recommend he be placed on suicide watch).

Where a defendant is a supervisor, to adequately plead deliberate indifference, the plaintiff must also allege that the supervisor was aware of a decedent's suicide risk but implemented or maintained a policy which led to other inmates engaging in self-harm or suicide attempts. *See Palakovic*, 854 F.3d at 233 (finding a plaintiff pled deliberate indifference by alleging supervisor defendants knew mentally ill inmates in solitary confinement regularly attempted suicide but continued to maintain policies allowing mentally ill inmates to be sent to solitary confinement); *see also McCullough*, 2024 WL 1468359, at *10 (finding a plaintiff pled deliberate indifference by alleging supervisor defendants "maintained policies denying suicidal inmates with appropriate care, including suicide-proof living quarters"). A plaintiff may also plead deliberate indifference by alleging a supervisor defendant failed to provide necessary training which would have prevented a decedent's suicide. *Palakovic*, 854 F.3d at 233. A plaintiff accomplishes this by:

> (1) "identify[ing] specific training not provided that could reasonably be expected to prevent the suicide that occurred" and (2) "demonstrat[ing] that the risk reduction associated with the proposed training is so great and so obvious that the failure of those responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives."

> *Palakovic*, 854 F.3d at 233 (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)).

A plaintiff sufficiently pleads deliberate indifference under either a policy theory or failure to train theory by alleging the defendant was aware of similar suicides but failed to act. *See Palakovic*, 854 F.3d at 233 (finding a plaintiff stated a claim against prison supervisors by alleging other inmates committed suicide under similar circumstances to the decedent); *see also McCullough*, 2024 WL 1468359, at *10 (finding the same).

Beginning with personal involvement, the Court rejects Commonwealth Defendants' argument that Hess is entitled to judgment on the pleadings because she left the facility before Joshua's suicide attempt and thus, lacked personal involvement. (Doc. 106, at 12-13). ). Heath alleges that SCI Smithfield nursing staff, including Hess and Goldizen, failed to adequately assess Joshua's mental health, failed to adequately monitor him in the hours leading up to his death, and failed to take precautions to prevent his suicide. (Doc. 80, ¶¶ 125-35). Heath alleges that Hess was on duty the night Joshua attempted suicide, failed to assess Joshua's mental health status, failed to properly observe Joshua, and failed to take necessary precautions like providing Joshua with a suicide prevention blanket. (Doc. 80, ¶¶ 91-93, 129-35). Even if Hess was not present for Joshua's suicide attempt, Heath pleads sufficient personal involvement because she alleges Hess personally failed to take actions to prevent Joshua's suicide attempt. *See Diorio*, 2021 WL 720257, at *7 (finding personal involvement based on allegations that a defendant "took part in a suicide risk evaluation of [the decedent] and allegedly had a role in determining what steps to take based on that evaluation"); *see also McCullough*, 2024 WL 1468359, at *6 (finding a nurse could be liable for deliberate indifference for not recommending the decedent be placed on suicide watch prior to his death).

The Court also rejects Commonwealth Defendants' arguments that Heath fails to allege sufficient personal involvement by Supervisor Defendants. (Doc. 106, at 16-17). Heath

alleges that Supervisor Defendants were responsible for overseeing staff and establishing and enforcing policies related to mental health at the time of Joshua's death. (Doc. 80, ¶¶ 19, 22, 27-29, 116, 122). Heath further alleges that DOC prisons, which includes SCI Smithfield, saw an increase in suicides prior to Joshua's death. (Doc. 80, ¶¶ 97-107). Heath also alleges that Supervisor Defendants knew that SCI Smithfield inmates faced an increased risk of inmate suicide due to inadequate staffing and monitoring. (Doc. 80, ¶ 96). Such allegations are sufficient to plead personal involvement. *See Palakovic*, 854 F.3d at 233; *see also McCullough*, 2024 WL 1468359, at *10.

Turning to whether Heath sufficiently pleads deliberate indifference, the Court finds that Heath sufficiently pleads Joshua had a strong likelihood of suicide because she alleges that he had a long history of severe mental health issues and was committed to multiple mental health facilities due to suicidal ideation. (Doc. 80, ¶¶ 43, 45-53); *see Palakovic*, 854 F.3d at 222 (finding a plaintiff pled a strong likelihood of suicide by alleging a long history of mental health issues and suicidal ideation); *see also Denman*, 2025 WL 951948, at *7 (same). Heath alleges that that the DOC had records of Joshua's severe mental health issues, including records showing that Joshua was previously involuntarily admitted to a mental health facility. (Doc. 80, ¶¶ 45-50, 119-21). Heath further alleges that Goldizen and Commonwealth Defendants had access to these records and should have reviewed them in connection with his treatment and deciding his conditions of confinement. (Doc. 80, ¶¶ 17-30, 45-50, 119-21, 129). Making all inferences in favor of Heath, the Court finds that Heath sufficiently pleads Goldizen and Commonwealth Defendants knew or should have known about Joshua's vulnerability to suicide based on DOC medical records Goldizen and

Commonwealth Defendants should have reviewed. *See Palakovic,* 854 F.3d at 231; *see also Denman,* 2025 WL 951948, at \*9.

The Court further finds that Heath adequately pleads Goldizen and Commonwealth Defendants "acted with reckless or deliberate indifference." *Palakovic,* 854 F.3d at 224. Heath alleges Hess and Goldizen, two nurses on duty the night of Joshua's suicide attempt, knew or should have known about Joshua's risk of suicide but substantially increased his risk of suicide by failing to conduct a proper medical assessment of him, failing to adequately monitor him, and failing to take necessary precautions such as providing him with a suicide prevention blanket. (Doc. 80, ¶¶ 129-35). These allegations are sufficient to plead deliberate indifference. *See Palakovic,* 854 F.3d at 232; *see also Denman,* 2025 WL 951948, at \*9; *see also McCullough,* 2024 WL 1468359, at \*6.

Regarding Supervisor Defendants, Heath alleges that Supervisor Defendants were aware that there was an increase in suicides in DOC prisons and that SCI Smithfield had inadequate staffing to sufficiently monitor inmates at risk of suicide. (Doc. 80, ¶¶ 95-107). According to Heath, despite this knowledge, Supervisor Defendants failed to implement policies to adequately monitor and evaluate potentially suicidal inmates and failed to implement adequate training programs to effectively monitor potentially suicidal inmates. (Doc. 80, ¶¶ 95-107, 116-24). Heath identifies specific policies and trainings Supervisor Defendants could have implemented that could have prevented Joshua's suicide attempt, such as policies and trainings directing adequate screenings of inmates with documented mental health issues, adequate supervision of inmates, and adequate suicide prevention measures, such as providing suicide prevention blankets. (Doc. 80, ¶ 121). These allegations are sufficient to plead Goldizen and Commonwealth Defendants were deliberately

indifferent. *See Palakovic,* 854 F.3d at 233; *see also McCullough,* 2024 WL 1468359, at \*10. Accordingly, the Court **DENIES** Goldizen's motion to dismiss Count II[2] and Commonwealth Defendants' motion for judgment on the pleadings on Counts I and II. (Doc. 88; Doc. 91).

### B. HEATH'S NEGLIGENCE CLAIM AGAINST GOLDIZEN

In Count V, Heath alleges Goldizen is liable for negligence. (Doc. 80, ¶¶ 169-183). However, Heath brings this claim in the alternative, and both Goldizen and Heath agree that "[i]f Defendant Goldizen is a state actor for purposes of 42 U.S.C. § 1983. . . [Heath's] alternative negligence claim against Defendant Goldizen, is moot." (Doc. 101, at 29). Both parties agree that Goldizen is a state actor. (Doc. 80, ¶ 126; Doc. 89, at 13-14; Doc. 101, at 29). Goldizen was a SCI Smithfield nurse at the time of Joshua's death, and prison medical personnel are generally considered state actors for purposes of Section 1983. (Doc. 80, ¶¶ 169-183); *see West,* 487 U.S. at 54 (finding medical personnel "employed by [a state] to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983"); *see also Martin v. Sec'y of Corr.,* No. 3:16-CV-2060, 2017 WL 3887968, at \*4 (M.D. Pa. Sept. 5, 2017) (stating "[a]lthough [defendant] was employed by a private healthcare provider, she was providing services at a state prison within prison confines, and thus was acting under color of state law for the purposes of a § 1983 claim"). Accordingly, the Court **GRANTS** Goldizen's motion to dismiss Count V. (Doc. 88).

### C. HEATH'S WRONGFUL DEATH ACT AND SURVIVAL ACT CLAIMS AGAINST

---

[2] Goldizen also moves to dismiss Counts VI and VII against her "in the event the Court dismisses" both Counts II and V against her. (Doc. 89, at 15). Because the Court does not dismiss Count II, the Court **DENIES** Goldizen's motion to dismiss Counts VI and VII. (Doc. 88).

COMMONWEALTH DEFENDANTS

In Counts VI and VII, Heath alleges that she is entitled to collect damages from all Defendants under the Wrongful Death Act and the Survival Act. (Doc. 80, ¶¶ 184-91). According to Commonwealth Defendants, they are immune from these claims under the doctrine of sovereign immunity because Pennsylvania has not waived sovereign immunity for state intentional torts. (Doc. 106, at 20-22). Heath counters that Counts VI and VII "are vehicles to bring claims for redress for [Section] 1983 claims rather than substantive claims themselves." (Doc. 112, at 30-32). According to Heath, to maintain a Section 1983 action on the behalf of a decedent, a plaintiff must assert those claims through state wrongful death and survivorship statutes. (Doc. 112, at 30-32).

The doctrine of sovereign immunity generally bars state tort claims against state officials sued in their official capacities. *See Tindell v. Beard*, 351 F. App'x 591, 595 (3d Cir. 2009) (nonprecedential) (stating "[t]o the extent that [plaintiff] alleged a state law tort claim, sovereign immunity protects the DOC defendants from being sued in their official capacities in federal court"). However, sovereign immunity does not bar Section 1983 claims brought against individual state officials. *See Hanani v. State of New Jersey Dep't of Env't Prot.*, 205 F. App'x 71, 79 (3d Cir. 2006) (nonprecedential) (stating "[s]tate officials, sued in their individual capacities, are 'persons' within the meaning of Section 1983. The [doctrine of sovereign immunity] does not bar such suits, nor are state officers absolutely immune from personal liability under Section 1983 solely by virtue of the 'official' nature of their acts").

A Section 1983 claim "does not die with the victim of the alleged constitutional deprivation." *Becker v. Carbon Cnty.*, 177 F. Supp. 3d 841, 848 (M.D. Pa. 2016); *see also Palakovic*, 854 F.3d at 234 (finding the parents of an inmate who committed suicide in prison

stated a Section 1983 claim on behalf of their son). "However, because Section 1983 is silent on the method of 'redress[' for cases brought on behalf of a decedent,] courts must turn to 42 U.S.C.A. § 1988(a)" to evaluate "'suitable remedies.'" *Becker*, 177 F. Supp. 3d at 848 (quoting 42 U.S.C.A. § 1988(a)). Section 1988(a) states:

> [I]n all cases where . . . [a statute is] deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

> 42 U.S.C.A. § 1988(a)

Because Section 1983 does not specify a remedy for civil rights actions brought on behalf of a decedent, Pennsylvania law governing remedies for wrongful death and survivorship claims "extend[s] to and govern[s] [Pennsylvania federal courts] in the trial and disposition of" such claims. 42 U.S.C.A. § 1988 (a); *see Becker*, 177 F. Supp. 3d at 853 (applying Pennsylvania law governing wrongful death actions); *see also Maldet v. Johnstown Police Dep't*, No. 2:19-CV-325, 2019 WL 2435869, at *7 (W.D. Pa. June 11, 2019) (applying Pennsylvania law governing wrongful death and survivorship actions); *see also Summers v. City of Philadelphia*, No. CV 17-191, 2017 WL 2734277, at *11 (E.D. Pa. June 26, 2017) (stating "[Plaintiff's] claims under the Wrongful Death and Survival Act may proceed at this early stage . . . several courts in this circuit have permitted such claims to proceed to discovery when based on a § 1983 claim"). Thus, a plaintiff bringing a Section 1983 claim on behalf of a decedent may rely on the Wrongful Death Act and Survival Act as a method of redress without bringing a separate Pennsylvania tort claim barred by sovereign immunity. *See Becker*, 177 F. Supp. 3d at 853; *see also Maldet*, 2019 WL 2435869, at *7; *see also Summers*, 2017 WL 2734277, at *11.

In Counts VI and VII, Heath asserts that she brings this action "by virtue" of the Wrongful Death Act and the Survival Act because Joshua, the victim of the alleged constitutional violations, is deceased. (Doc. 80, ¶¶ 186, 190). According to Heath, Counts VI and VII "are vehicles to bring claims for redress for § 1983 claims rather than substantive claims themselves." (Doc. 112, at 30-32). Sovereign immunity does not bar Heath from citing to state wrongful death and survivorship statutes as means of redress for her Section 1983 claims involving alleged violations of a decedent's rights. *See* 42 U.S.C.A. § 1988(a); *see also* *Becker*, 177 F. Supp. 3d at 853; *see also* *Maldet*, 2019 WL 2435869, at *7; *see also* *Summers*, 2017 WL 2734277, at *11. Accordingly, Commonwealth Defendants' motion for judgment on the pleadings on Counts VI and VII is **DENIED**. (Doc. 91).

## IV.    LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (2002). Further, "[a] district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672, 673 (3d Cir. 2014) (not precedential) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Here leave to amend is not warranted because the Court only dismisses Count V against Goldizen, Heath agrees Count V should be dismissed against Goldizen if the Court finds she is a state actor, and the Court finds Goldizen is a state actor. (Doc. 101, at 29). Accordingly, the Court **DENIES** leave to amend.

## V.    CONCLUSION

For the foregoing reasons, Wellpath's motion to dismiss (Doc. 86) and

Commonwealth Defendants' motion for judgment on the pleadings (Doc. 91) are **DENIED**.

Goldizen's motion to dismiss is **GRANTED in part** and **DENIED in part**. (Doc. 88).

Goldizen's motion is **GRANTED** regarding Count V but **DENIED** regarding all other

counts. Count V is **DISMISSED with prejudice** regarding Goldizen. (Doc. 80, ¶¶ 169-183).

An appropriate Order follows.

**BY THE COURT:**

Dated: March 2, 2026                                    *s/ Karoline Mehalchick*
                                                         **KAROLINE MEHALCHICK**
                                                         **United States District Judge**